McKinney, J.,
delivered the opinion of the Court.'
This was an action of assumpsit, founded upon an alleged new promise made by Nixon, a discharged bankrupt, to pay the plaintiffs a debt due to them from the defendant prior to his bankruptcy. Judgment was for the defendant in the Court below.
*354 It appears that in April, 1839, the plaintiffs obtained two judgments before a justice of the peace against the defendant, amounting together to the sum of $97 86. In the fall of 1853, executions upon said judgments were placed in the hands of one Turner, who, as agent of the plaintiffs for that purpose, called on the defendant and presented said executions, and requested him to pay the amount specified therein. Defendant replied, “he would pay the executions; and he intended paying this debt and all his other old debts when he got able.”
The declaration alleges the new promise as the ground of the action; and states the promise of the defendant as a promise to pay the debt “ when he got ableand avers that at and before the commencement of this suit he was able to pay said debt. This was stating the promise most favorably for the defendant. The promise that “he would pay the executions” might perhaps have been regarded as a substantive, unconditional promise. But the statement of it as a conditional promise to pay “when he got able” — taking together all that was said by the defendant — is perhaps the fair import of the promise; at all events, it does no harm.
The question to be decided is as to the sufficiency of the promise above stated. It is conceded that a promise to pay a debt barred by a discharge in bankruptcy, like a debt barred by the statute of limitations, is binding without other consideration than the previous legal obligation. But it is argued that the promise here relied on for a recovery is not sufficient to support the action: first, because it is a conditional promise; and, secondly, because it properly imports an intention and agreement, not to pay this particular debt, separately from his “other *355 old debts,” when able, but that tbe true interpretation of tbe promise is, that when be should become able to pay all bis “old debts,” be intended doing so — including tbe debt to tbe plaintiffs.
It would seem that, upon sound principle, no distinction can be taken between a debt barred by a discharge in bankruptcy and a debt barred by tbe statute of limitations, as regards tbe nature and sufficiency of tbe promise requisite to revive tbe cause of action, or to give a new right of action. Tbe cases stand upon tbe same principle, and what would be a sufficient promise in tbe one case ought to be so considered in tbe other. Tbe new promise, it is admitted, must be direct and unequivocal; but it by no means follows that if a condition be annexed to such promise, it is thereby rendered nugatory. Tbe contrary doctrine we understand to be well settled. If tbe new promise be coupled with a condition, tbe plaintiff must aver and prove that the condition has been performed, or perfqrmance duly tendered. 2 Grreenleaf on Ev., § 440. And if it be a promise to pay when he is able, tbe plaintiff must, in like manner, aver in pleading and establish by proof tbe ability to pay at tbe time of tbe institution of tbe suit. Ibid. Proof of such conditional promise would not support an averment in tbe declaration of an absolute, unqualified promise. Tbe case of Brown vs. Collier, 8 Humph., 510, is imperfectly reported. It was perhaps rightly determined upon its own peculiar facts; and we do not understand it as being necessarily inconsistent with the doctrine here laid down, though tbe opinion of tbe Court is very brief, and certainly not very satisfactory.
2. Tbe new promise proved in this case, that “be *356 ■would pay the executions,” is a positive, direct promise, in and of itself; and neither the effect nor meaning of this promise is qualified or rendered doubtful by what followed in the same connection, that “he intended paying this debt and all his other old debts when he got able.” The attempt to construe the promise, that the defendant meant to pay all his debts together at the same time, and that he did not intend to pay the plaintiffs’ until he should be able to pay all his other creditors, would be not only to construe the language of the promise most strongly in favor of the promisor, but, as we think, to violate the fair import of the promise. The specific promise to pay the plaintiffs’ debt is sufficient of itself to support the action; and as the general declaration of intention which followed does not affect the legal efficacy of the promise, it may be treated as surplusage. Indeed, such general declaration of intention, in law, can have no operation; it amounts to nothing: being a mere vague declaration of intention in respect to his creditors at large, and referring itself to no particular debt except the debt to the plaintiffs, no right of action could be based upon it.
In this view, the instructions of the Court are not entirely accurate; and the verdict is not only unsupported by evidence, but is in direct opposition to the. only evidence in the record.
The judgment will therefore be reversed, and the case be remanded for a new trial.